UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ALEXANDRIA STRIEGEL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:13-cv-01338-GMN-VCF |
| vs. | ) | |
| | ) | **ORDER** |
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY, DOES I–V, and | ) | |
| ROE CORPORATIONS I–V, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion for Summary Judgment (ECF No. 84) filed by

Defendant American Family Mutual Insurance Company ("Defendant").  Plaintiff Alexandria

Striegel ("Plaintiff") filed a Response (ECF No. 87), and Defendant filed a Reply (ECF No.

88).  For the reasons discussed below, Defendant's Motion is **GRANTED**.

## I.      BACKGROUND

This case arises out of an automobile accident occurring on March 24, 2006, involving

Defendant's insured, Rujake Gross ("Gross"). (*See* Exs. 7, 9 to Response, ECF No. 87).  Gross

held a policy of insurance with Defendant American Family Mutual Insurance Company

("Defendant"), which included bodily injury liability limits of $100,000 per person and

$300,000 per occurrence. (Ex. 2 to Response, ECF No. 87).  As a result of the accident, seven

individuals, including Plaintiff Alexandria Striegel and Thomas Striegel (collectively, the

"Striegels"), filed bodily injury claims with Defendant against Gross's policy. (*See* Exs. 7, 9 to

Response, ECF No. 87).

On April 7, 2006, Plaintiff's counsel, Thomas Christensen ("Christensen") of

Christensen Law Offices LLC, sent a letter to Defendant, advising Defendant of his

1   representation of Plaintiff and requesting information regarding Gross's coverage. (Ex. C to

2   Mot. Summ. J., ECF No. 84-3).  Subsequently, on April 28, 2006, Christensen sent Defendant

3   another letter to Defendant, advising that his clients, the Striegels, "are willing to settle these

4   claims for the per person policy limits provided that you have the same in my office within two

5   weeks together with proof that those are the only policy limits available to provide

6   compensation to my clients for this incident." (Ex. 3 to Response, ECF No. 87).  Christensen's

7   letter also included a list of providers and signed medical authorizations for the Striegels. (*See*

8   *id.*).

9        On July 10, 2006, Defendant sent a letter to Christensen, requesting signed medical

10  authorizations and a list of all providers rendering treatment to the Striegels. (Ex. G to Mot.

11  Summ. J., ECF No. 84-7).  The letter also informed Christensen as follows:

12       As you are already aware, there are seven (7) people claiming
         injuries as a result of this accident.  The bodily injury liability limits
13       on the above policy are 100/300.  There is no umbrella policy.
         Therefore, we will not be able to settle any individual claims
14       presented until demands for all injured parties are received.

15  (*Id.*).

16       On November 8, 2006, Christensen sent another letter to Defendant, acknowledging

17  receipt of Defendant's July 10, 2006 letter. (Ex. 4 to Response, ECF No. 87).  The letter also

18  referenced the April 28, 2006 letter, stated that "[t]o date we have not heard anything from you

19  with regards to your evaluation of the claims for our clients," informed Defendant that a copy

20  of a complaint was enclosed, and requested Gross's residence address "so that we may serve

21  him personally." (*Id.*).

22       In response, on November 13, 2006, Defendant sent a letter to Christensen,

23  acknowledging receipt of the November 8, 2006 letter. (Ex. D to Mot. Summ. J., ECF No. 84-

24  4).  In its letter, Defendant expressed that it had researched its claim file and could not locate

25  the April 28, 2006 letter. (*Id.*).  Further, Defendant stated as follows:

In addition to our written correspondence, I called your office on May 23, 2006, October 100, 2006, and on October 19, 2006 … urging that you forward to us a demand, as we were anxious to move this matter towards resolution considering we only have a 100/300 policy, which appears to be insufficient to compensate the seven (7) individuals making claims against our policy.  We understand there are several parties who sustained significant injuries.

We have received the bill and records from the health insurer AHC regarding the Sunrise Hospital inpatient services for [Plaintiff], immediately following the accident.  We do not have any bills or information regarding Thomas Striegel.

…

Unfortunately, we have very minimal information regarding the nature and extent of the injuries or the medical expenses for any of the other parties.

…

We remain anxious to resolve all claims arising from this accident without the necessity of litigation.  However, in light of the serious injuries sustained by several of the parties, we cannot settle any individual claims until we have the medical documentation for all claimants.   We have been actively soliciting demands from all parties. Unfortunately, we cannot guarantee the exact time frame when this may occur.  The remaining parties have not cooperated with us and responded to our requests for medical documentation and/or authorizations.

(*Id.*).

On November 14, 2006, Christensen sent another letter to Defendant, advising that he was "in the process of serving the Complaint in the above referenced claim." (Ex. 5 to Response, ECF No. 87).  Accordingly, the Striegels filed suit in state court against Gross, and on July 26, 2010, the parties reached an agreement in lieu of trial. (*See* Ex. N to Mot. Summ. J., ECF No. 84-14).  Pursuant to the agreement, the Striegels would make an offer of proof to the court as to the amount of damages. (*Id.* 3:21–4:2).  Accordingly, the Striegels would not request more than $1,500,000, and Gross would not argue for less than $1,500,000. (*Id.* 4:3–12). Additionally, Gross agreed to assign to the Striegels any claims he may have against

Defendant, and the Striegels agreed to enter into a covenant not to execute the judgment obtained against Gross. (*Id.* 5:7–13).

On September 17, 2007, Defendant filed an interpleader action in state court to resolve the seven claims. (*See* Ex. 9 to Response, ECF No. 87).  Subsequently, on November 25, 2008, the parties entered into a Stipulation and Order for Release of Inter Pled Funds and Dismissal of Interpleader. (Ex. L to Mot. Summ. J., ECF No. 84-12).  Pursuant to the Stipulation, Plaintiff received $100,000 and Thomas Striegel received $16,520 from the $300,000 per occurrence policy limit under Defendant's policy. (*Id.*).  Each of the seven claimants, except for the Striegels, agreed to dismiss their cases against Gross with prejudice. (*Id.*).

On June 3, 2013, Plaintiff filed the instant action against Defendant in state court. (*See* Pet. Removal, ECF No. 1).  Defendant subsequently removed the action to this Court. (*Id.*).  Shortly thereafter, Plaintiff filed her Amended Complaint. (ECF No. 27).  Although Plaintiff does not delineate her individual causes of action, she appears to bring the following claims: (1) breach of the implied covenant of good faith and fair dealing; (2) breach of contract; (3) violations of NRS 686A.310; (4) negligence; (5) fraud; and (6) constructive fraud. (Am. Compl. ¶¶ 18–75).

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

1   in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

2   Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

3   principal purpose of summary judgment is "to isolate and dispose of factually unsupported

4   claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

5          In determining summary judgment, a court applies a burden-shifting analysis.  "When

6   the party moving for summary judgment would bear the burden of proof at trial, it must come

7   forward with evidence which would entitle it to a directed verdict if the evidence went

8   uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

9   the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

10  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

11  contrast, when the nonmoving party bears the burden of proving the claim or defense, the

12  moving party can meet its burden in two ways: (1) by presenting evidence to negate an

13  essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

14  party failed to make a showing sufficient to establish an element essential to that party's case

15  on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–

16  24.  If the moving party fails to meet its initial burden, summary judgment must be denied and

17  the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

18  398 U.S. 144, 159–60 (1970).

19         If the moving party satisfies its initial burden, the burden then shifts to the opposing

20  party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

21  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

22  the opposing party need not establish a material issue of fact conclusively in its favor.  It is

23  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

24  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

25  *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

1    summary judgment by relying solely on conclusory allegations that are unsupported by factual

2    data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

3    beyond the assertions and allegations of the pleadings and set forth specific facts by producing

4    competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

5          At summary judgment, a court's function is not to weigh the evidence and determine the

6    truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

7    The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

8    in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

9    not significantly probative, summary judgment may be granted. *See id.* at 249–50.

10   **III.    DISCUSSION**

11          **A.    Bad Faith**

12          Insurers have a special relationship with its insureds that arises under the implied

13   covenant of good faith and fair dealing. *Allstate Insurance Co. v. Miller*, 212 P.3d 318, 324

14   (Nev. 2009).  This duty does not arise out of contract, but rather the covenant is imposed on

15   insurers by the law. *U.S. Fidelity & Guaranty Co. v. Peterson*, 91 Nev. 617, 620, 540 P.2d 1070

16   (1975).  "A violation of the covenant gives rise to a bad-faith tort claim." *Miller*, 212 P.3d at

17   324.  Bad faith is "an actual or implied awareness of the absence of a reasonable basis for

18   denying benefits of the [insurance] policy." *Id.* (quoting *Am. Excess Ins. Co. v. MGM Grand*

19   *Hotels, Inc.*, 102 Nev. 601, 605, 729 P.2d 1352 (1986)).

20          As recently discussed in *Miller*, there are duties that stem from the covenant of good

21   faith and fair dealing, which when violated, give rise to claim of bad faith. *Id.*  In particular,

22   there are two general duties that insurers have to their insureds: the duty to defend and the duty

23   to indemnify. *Id.*  These duties then give rise to other duties.  The discussion in *Miller* on this

24   point is instructive:

25               The duty to defend contains two potentially conflicting rights: the
                 insurer's right to control settlement discussions and its right to

control litigation against the insured. 14 *Couch on Insurance* 3d §§ 200:1, 203:1 (2005).   Each of these contractual rights creates additional duties for the insurer.   The right to control settlement discussions creates the duty of good faith and fair dealing during negotiations. *See Couch*, supra, at § 203:1 (stating that the insurer's right to control settlement negotiations may create a conflict of interest between the insurer and the insured, and therefore, the insurer must act in good faith and give the insured's interests equal consideration with its own).   The right to control litigation creates the duty to defend the insured from lawsuits within the insurance policy's coverage. *Couch*, supra, at § 200:1.

*Miller*, 212 P.3d at 324–25.  Accordingly, an insurance company's duty to defend, and potential duties that arise under this general duty, "attach [ ] upon notice of a demand against its insured." *See id.* at 325.  It ends once the duty has been discharged. *Id.* at 326.

Here, Plaintiff has not presented any evidence from which a reasonable trier of fact could conclude that Defendant acted in bad faith.  Rather, the record evidence demonstrates that Defendant acted reasonably throughout the claims process.  On April 28, 2006, Christensen made a two-week per person policy limit settlement demand on behalf of "Thomas Striegel and Alexandrea Striegel" for the automobile accident occurring on March 24, 2006. (*See* Ex. H to Mot. Summ. J., ECF No. 84-8).  However, the letter also states that Christensen was still "in the process of gathering the medical records and bills." (*Id.*).  In July 10, 2006, Defendant sent Plaintiff a letter advising that, because there were seven people claiming injuries as a result of the accident and the bodily injury liability limits on the policy were $100,000 per person and $300,000 per occurrence, Defendant would not be able to settle any individual claims presented until demands for all injured parties were received. (*See* Ex. G to Mot. Summ. J., ECF No. 84-7).  At that time, Defendant had not received medical records or demands from all of the claimants involved in the accident. (*See id.*; Ex. 7 to Response, ECF No. 87).

First, Defendant contends that it did not receive the April 28, 2006 demand letter. (Mot. Summ. J. 5:14–15, ECF No. 84).  This is supported by Defendant's July 10, 2006 letter, which

1    does not acknowledge the April 28, 2006 letter and requests medical authorization, even though

2    such authorizations were included with the April 28, 2006 letter. (*See* Ex. G to Mot. Summ. J.,

3    ECF No. 84-7).  Defendant's lack of receipt is further supported by its November 13, 2006,

4    which informs Christensen that it had not received the April 28, 2006 demand letter. (*See* Ex. D

5    to Mot. Summ. J., ECF No. 84-4).  If Defendant did not receive the April 28, 2006 letter, which

6    is strongly supported by the record evidence, its failure to settle the Striegels' claim for the per

7    policy limits within the two-week time period could not have constituted bad faith.

8         Second, even if Defendant did receive the April 28, 2006 demand letter, its decision to

9    not settle the Striegels' claim for the per policy limits within the two-week time period was

10   reasonable and did not constitute bad faith.  Seven individuals made bodily injury liability

11   claims against Defendant's policy. (*See* Exs. 7, 9 to Response, ECF No. 87).  Further, the

12   policy had a per occurrence policy limit with no umbrella coverage. (*See* Ex. 2 to Response,

13   ECF No. 87).  Moreover, as of July 10, 2006, Defendant had not received complete medical

14   documentation from the Striegels to properly evaluate their claim, and had not received

15   complete documentation or demands from the other five claimants. (*See* Ex. G to Mot. Summ.

16   J., ECF No. 84-7).  Thus, it was reasonable for Defendant to not have settled the Striegels'

17   claims within the two-week time period and did not constitute bad faith.

18        Moreover, the record evidence does not demonstrate a genuine issue of material fact

19   regarding whether Defendant's subsequent actions amounted to bad faith.  Although Plaintiff

20   argues that it sent Defendant two letters in November 2006, demonstrating a continued

21   willingness to settle for the per person policy limit, neither letter informed Defendant of such

22   continued willingness. (*See* Exs. 4 and 5 to Response, ECF No. 87).  Apart from Plaintiff's

23   willingness to settle for the per person policy limit expressed in the April 28, 2006 letter,

24   nothing on the record demonstrates that Plaintiff expressed to Defendant a continued

25   willingness to settle for the per person policy limit after the two-week window closed.

1    Furthermore, Defendant kept Gross informed throughout the entire process. (*See* Dep. of

2    Rujake Gross 58:22–64:13, 77:2–12, 195:2–197:22, ECF No. 84-2).

3         This case involves similar facts to many cases filed by attorney Christensen in this

4    District. *See, e.g.*, *Sierzega v. County Preferred Ins. Co.*, 2014 WL 1668630 (D. Nev. Apr. 25,

5    2014); *AAA Nevada Ins. Co. v. Chau*, 808 F. Supp. 2d 1282 (D. Nev. 2010); *Hicks v. Dairyland

6    Ins. Co.*, 2010 WL 2541175 (D. Nev. Mar. 3, 2010).  Each of these cases involved

7    circumstances in which, shortly after an accident, a letter was sent to an insurance company

8    offering to settle all claims for the policy limit.  In each of these cases, as in the instant case, the

9    letter stated that the offer would remain open for two weeks, yet included no records or

10   documentation from which the insurance company could timely assess the value of the victim's

11   claim.  Each court concluded that the insurance company's subsequent refusal to tender the

12   policy limit within two weeks did not constitute bad faith, as the lack of documentation

13   regarding the victim's injuries constituted a reasonable basis to deny the claim. *See Sierzega*,

14   2014 WL 1668630, at *4–5; *Chau*, 808 F. Supp. 2d at 1287; *Hicks*, 2010 WL 2541175, at *9.

15        Moreover, in *Chau*, this Court noted that Christensen clearly has a *modus operandi* of

16   using similar demand letters in multiple cases in this District, which impose an unreasonable

17   time constraint of two weeks on their demands for payment to set up a bad faith claim. 808 F.

18   Supp. 2d at 1286, n.1.  Since *Chau*, Christensen has unsuccessfully attempted to bring similar

19   bad faith claims based primarily on a two-week demand letter in at least two more cases, not

20   including the present action. *See Sierzega*, 2014 WL 1668630; *Kelly v. CSE Safeguard Ins.,

21   Co.*, 2011 WL 4526769 (D. Nev. Sept. 27, 2011).  Despite this Court's previous admonishment,

22   Christensen continues to attempt bad faith actions premised on unreasonable demands,

23   knowing full well that numerous courts in this District have repeatedly found such claims to be

24   baseless.  Accordingly, the Court will forward this Order to the State Bar of Nevada for

25   disciplinary review.  Moreover, if Christensen attempts to bring before this Court another

baseless bad faith claim premised on an unreasonable settlement demand, sanctions will be imposed.

The Court acknowledges that there may be factual scenarios where a settlement demand with a two-week time limit could give rise to a bad faith claim.  However, in these cases, such settlement demands, made when the insurers lack sufficient information or documentation to properly evaluate the claims at issue, place an unreasonable demand upon the insurers.  Christensen's two-week demand was especially unreasonable here, where Defendant was not just waiting on additional documentation from the Striegels but rather, was diligently pursuing documentation and demands from the five other claimants.  It was clearly reasonable that Defendant decided to wait to receive documentation from all seven claimants, so it could properly evaluate all of the claims comparatively.  Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to this claim.

**B.      Remaining Claims**

Plaintiff bases her remaining claims on the same conduct alleged to support her bad faith claim.  However, the record evidence does not create a genuine issue of material fact as to whether Defendant breached any provisions of the policy, violated any provisions of NRS 686A.310, or committed negligence, fraud, or constructive fraud.  As explained above, Defendant acted reasonably throughout the claims process.  Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's remaining claims.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 84) is **GRANTED**.  Accordingly, Defendant is entitled to judgment as a matter of law on all claims.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 7th day of July, 2015.

Gloria M. Navarro, Chief Judge
United States District Judge